**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2022-19

IN THE MATTER OF THE
VINCENT W. URBANK AND
IDA M. GRAF URBANK
REVOCABLE LIVING TRUST
DATED 07/18/1991.

_____

Submitted January 27, 2021 - Decided July 7, 2022

Before Judges Accurso and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. 186576.

Vincent A. Urbank, appellant pro se.

Taff, Davies & Kalwinsky, attorneys for respondent Successor Trustee of the Vincent W. Urbank and Ida M. Graf Urbank Revocable Living Trust (Joel A. Davies, on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

In this probate matter, Vincent A. Urbank appeals pro se from a January 6, 2020 judgment approving the formal accounting of a revocable living trust;

a January 13, 2020 order denying his motion to change venue; and a January 24, 2020 order denying reconsideration of both. We affirm the denial of the motion to change venue, but vacate the judgment approving the accounting and remand for the probate judge to take responsibility to ensure the three successive trustees the court has appointed in this case since its approval of the settlement agreement resolving the trust litigation each files an accounting that can be fairly approved by the court after notice to the beneficiaries, ordering the disgorgement of commissions and fees the court has previously awarded, if necessary, to secure the trustees' compliance.

Our understanding of the history of this case is admittingly incomplete. What impels us to act on such an unsettled record is the current trustee's agreement with Urbank that "there have been no previously submitted or approved accountings" in this matter, apparently since the appointment of the first court-appointed trustee in 2014. If that understanding is incorrect and accountings by prior trustees have been submitted and approved by the court, then production of those accountings and proof of their approval will satisfy the remand order. But if accountings have not been filed and fees and commissions awarded notwithstanding, that should be rectified with the probate judge taking all necessary steps to ensure all trustees and

A-2022-19

administrators appointed by the court, having no connection to the estate or the trust, fully account for estate and trust assets formerly in their hands. The probate judge should also ensure the beneficiaries come to an agreement on the appointment of a successor trustee, thereby ending the court's appointment of any more trustees for this trust.

The record we have reveals the following. Vincent A. Urbank was apparently the only child of Vincent W. Urbank and Ida M. Graf, the grantors of a revocable trust established in 1991. Following their deaths, Vincent J. Urbank, grandson of the grantors, sued his father on behalf of himself and his three siblings, alleging their father, as successor trustee, had failed to make required distributions to them. Their father, our appellant, apparently contended his father created a testamentary trust in 2006, superseding the revocable trust and placing all then-existing trust assets and all other estate assets into a new trust to be administered to meet his needs, with his children taking the remainder at his death.

Appellant and his children settled the trust litigation in 2014 via a comprehensive seventeen-page agreement in our appendix. That agreement was "based on the understanding that the existing trust assets held in trust by the interim trustee [were] on the order of $1,640,000." The parties agreed

$500,000 of trust assets would be allocated to appellant's children, leaving, after taxes and attorney's fees, approximately $875,000 in real property and liquid assets "allocated to the defendant Vincent A. Urbank in trust to provide for his reasonable living expenses commensurate with his present standard of living (including without limitation the cost of housing, clothing, food, entertainment, and reasonable vacation travel)." Urbank represents he has made no requests for distributions, preferring to allow trust assets to accumulate and grow.

The court-appointed interim trustee/temporary administrator of the Estate of Vincent W. Urbank, Peter Van Dyke, Esq., was charged with a variety of tasks under the agreement and permitted reasonable trustee fees as approved by the court, "with the anticipation" that the $50,000 set aside under the agreement, which included income taxes due, "shall suffice to meet this obligation," albeit recognizing the sum "only establish[ed] an estimate subject to the realities of the taxes charged and the interim trustee's fees allowed by the court." The agreement also provided that any trustee would provide an annual "comprehensive accounting to the contingent beneficiaries" with a copy to Vincent A. Urbank.

A-2022-19

The October 27, 2014 order approving the settlement provided the parties were to nominate within forty-five days a corporate trustee, or if no corporate trustee could be found willing to accept appointment, another trustee acceptable to all parties, and that "[a]ll assets currently held in the control of the interim trustee and or the estate of Vincent W. Urbank, shall be transferred to the new trustee," who "shall retitle all assets to be held in the Vincent W. Urbank Testamentary Trust." Finally, as relevant here, the order provided that "Peter Van Dyke shall be paid the sum to be determined with his <u>final accounting</u> for his services as the interim trustee of the Vincent W. Urbank and Ida M. Graf Revocable Living Trust" and "[a]ny new trustee shall comply with the terms of the Settlement Agreement as to the requirement to account to the beneficiaries and the contingent beneficiaries of the Vincent W. Urbank Testamentary Trust" (emphasis added).

The appendix includes a July 25, 2016 order prepared by Van Dyke appointing Jerome Landers, Esq., as successor trustee of the Vincent W. Urbank and Ida M. Graf Revocable Living Trust[1] to be bonded in the sum of

---

[1] There is no explanation for the appointment of a successor trustee for the Vincent W. Urbank and Ida M. Graf Revocable Living Trust when the settlement agreement and the 2014 order approving it directed all trust assets to be retitled and held in the Vincent W. Urbank Testamentary Trust.

$762,000 and that VanDyke be awarded commissions as interim trustee of $12,233.24 pursuant to N.J.S.A. 3B:18-25 and $27,444.14 pursuant to N.J.S.A. 3B:18-28(a) and an administrator's commission of $44,952.86, for total commissions of $84,630.24.[2] The order does not approve or reference a final accounting despite providing "in lieu of executing release and refunding bonds, the bonding company accept the within order and discharge the present trustee bond."

The current trustee, Joel A. Davies, Esq., states he was appointed successor trustee for the Vincent W. Urbank and Ida M. Graf Revocable Living Trust by order of October 17, 2016, which order is not in the appendix. There is, however, a "corrective interim order" of January 13, 2017, which explains "the most recent order of the court having preserved the right for the prior court-appointed, substitute trustee, Jerome C. Landers, Esquire, to be discharged . . . upon his filing of an appropriate order to show cause and final accounting . . . and the court having also advised" Landers "might be relieved

_____

[2] Although the order states it was entered for reasons expressed on the record on July 25, 2016, a transcript not provided to us, it also states the court "awarded the above-referenced full commission, as the Temp Trustee/ Administrator has waived his otherwise applicable entitlement to counsel fees and the court has not awarded income commissions for 2014, in an amount of $4,712.04, and for 2015, in an amount of $2,210.34, to which Temp Trustee/ Ad might otherwise be entitled."

A-2022-19

of his role . . . upon the identification of another attorney . . . versed in probate matters, and who deemed himself/herself ready, willing, able, and capable to assume the role, and with independent counsel, Joel A. Davies, Esquire, having indicated that he would accept said appointment," the court appointed Davies as successor trustee replacing Landers and ordered Landers to file "a certified accounting" within forty-five days (emphasis added).

Although the settlement agreement and the order approving it require any trustee to file an annual accounting, Davies made no move to do so until Urbank wrote to him in July 2019, about a letter Urbank received from Fidelity Investments that two accounts titled in the name of his parents' revocable trust totaling $65,009.13 were about to escheat to the State and information received from his son that several others were already in the hands of the unclaimed property administrator. Urbank complained in that letter that he had "not received any accounting, done by your firm as trustee, or any other firm/trustee since the settlement agreement dated October 27, 2014."

Davies wrote back in August thanking Urbank for his letter, and advising he had acted on the information and been in contact with both Fidelity and the State to retrieve the funds. Davies acknowledged that Urbank was "correct that accountings are to be filed annually," but stated he had "not

A-2022-19

done so because no accounting was filed by Jerome C. Landers, Esq. and as such there was no 'starting point' for my term." Davies advised he was "[n]evertheless . . . filing two (2) accountings next week for the periods of October 17, 2016, through October 16, 2017, and October 17, 2017, through October 26, 2018."

Davies filed a verified complaint in October 2019 for approval of his two accountings. In his complaint he noted that "[s]ince 2014, the court has gone through multiple trustees with no success," that "there have been no previously submitted or approved accountings to date," that he wrote two letters to Landers in September and November 2018 "inquiring as to the status of his certified accountings," but no accounting had been forthcoming and thus Davies "completed two independent accountings . . . using other information and documentation provided to him." Davies' subsequent certification of services noted he spent three hours on October 24, 2017, preparing the accounting from October 17, 2016, through October 16, 2017; three hours on October 16, 2018, preparing the accounting for October 17, 2017, through October 16, 2018; and two hours on September 4, 2019, preparing his verified complaint and order to show cause to approve the accounting.

Urbank filed objections to the accounting. First, he noted he had not requested a formal accounting of Davies, who had been the trustee for over three years, but only that he provide the annual accountings he was required to provide by the settlement agreement. Urbank complained Davies had taken it upon himself to file a formal accounting "exclusively for his own benefit" and was looking to the trust to pay for it. Urbank also complained the accountings were not accurate, in that Davies had admitted "he does not have a starting point to even provide an accurate accounting" and took no action for almost three years after appointment to even request an accounting from the trustee he succeeded. Urbank further noted the two dormant Fidelity accounts and the other $20,000 in the hands of the unclaimed property administrator, which represented nearly $85,000 in assets, were not included in either of Davies' accountings. Finally, Urbank questioned the valuation of the real estate, which had increased from an appraised value of $428,000 in 2014 to $628,530 in 2016, an increase of $200,530 with no explanation.

Davies acknowledged he "didn't know about this $85,000 because no one ever told [him]" the assets existed and it would be reflected in his next accounting. He reiterated that Landers never provided the final accounting he

was ordered to provide, forcing Davies "to cobble together the information that [he] had to the best of [his] ability for the time period."

As the judge who had previously presided over the matter and appointed all three trustees had retired, the matter was heard by a different judge who, after a brief argument, approved the accountings, including corpus commissions of $3,942.87 and income commissions of $728.03 on assets of $1,065,069.51, finding Urbank's exceptions insufficiently specific under Rule 4:87-8. The judge also ordered the trust to pay $4,716.95 "for legal services rendered in connection with the preparation and filing of the accountings."

Urbank moved for reconsideration and requested a change of venue based on the court having appointed trustees and an interim administrator and awarded them fees and commissions without requiring those hand-picked fiduciaries to file accountings or otherwise comply with the settlement agreement and the orders appointing them.[3] In addition to failing to marshal

---

[3] Urbank also complained about possible conflicts of interest stemming from other disputes he had with Toms River. See State v. Urbank, No. A-4221-16 (App. Div. Nov. 15, 2018) (slip op.); State v. Urbank, No. A-4089-17 (App. Div. May 1, 2019) (slip op.); State v. Urbank, No. A-0281-19 (App. Div. March 17, 2021) (slip op.). See Animal Prot. League of N.J. v. N.J. Dep't of Envtl. Prot., 423 N.J. Super. 549, 556 n.2 (App. Div. 2011) (permitting the citation of unpublished opinions under Rule 1:36-3 as "useful for the limited purpose of presenting relevant but general background and history").

trust assets as evidenced by the $85,000 in dormant accounts, Urbank also alleged the first trustee and administrator, Van Dyke, failed to pay a $30,000 nursing home bill for Vincent A. Urbank, failed to pay taxes on a Philadelphia property belonging to the trust for two years and allowed the entry of a judgment against the estate. Urbank expressed a lack of confidence in any judge sitting in the county to hold Van Dyke, Landers or Davies responsible for their actions or inaction.

Again following brief argument, the judge denied Urbank's applications, finding he had not met his burden for a change of venue and his arguments as to the accountings only rehashed his initial objections. In the transcript of the argument, the judge referenced her satisfaction with a certification received from Landers, which is not in the appendix, explaining he'd never provided an accounting because the trust assets "did not ever really come into his hands." The judge dismissed Urbank's arguments that approval of these two ad hoc accountings, which lack any real basis and don't reference or account for anything that occurred prior to October 2016, would deprive him of any ability to ever sort this out as the next accountings will simply tie back to these two court-approved accountings.

Urbank appeals, reprising the arguments he made to the trial court and stressing the judge erred in failing to require the prior trustees and administrator to account and to deliver all documents in their possession relating to the trust or the estate to the current trustee and by failing to address their apparent mismanagement and neglect of trust duties. Davies counters that the court should not disturb the findings of the trial court but says nothing about the reliability of his accountings, which he admittedly "cobble[d] together" without complete records from the two prior trustees.

Acknowledging the record is incomplete and that we may not have been provided all the relevant facts, to say — on what is before us — that we find the Probate Part's handling of this matter concerning would be an understatement. We find no merit in Urbank's motion to change venue, although we acknowledge his concern about the trial court's apparent failure to hold the trustees and administrator it appointed accountable. Rule 4:87-1 provides that actions to settle the accounts of administrators and testamentary and non-testamentary trustees shall be brought in the county where such fiduciaries received their appointment. The trustees and administrator appointed by the court in this case were all appointed in Ocean County, and it

is that court that should ensure that each of those fiduciaries are held to account.

As we noted at the outset of this opinion, what has impelled us to act on what is plainly an incomplete record is the apparent unanimous view of both Urbank and the current court-appointed trustee that there has never been an approved accounting of trust assets since the trust litigation was settled in 2014. It further appears that notwithstanding the order providing that "Peter Van Dyke shall be paid the sum to be determined with his final accounting for his services as interim trustee of the Vincent W. Urbank and Ida M. Graf Revocable Living Trust," Van Dyke received nearly $85,000 in trust and administrator's commissions without apparently ever filing a final accounting or delivering to his successor all account information, documents relating to the real properties, copies of account statements and records of disbursements. As the trustee and the court continue to refer to the Vincent W. Urbank and Ida M. Graf Revocable Living Trust instead of the Vincent W. Urbank Testamentary Trust, it would also appear the assets have not been retitled as agreed and ordered.

Although the second judge apparently credited the certification by Landers to the effect that he did not account because the trust assets "did not

ever really come into his hands" during the three months he appeared to have served as a trustee, the January 13, 2017 "corrective interim order" entered after Davies replaced Landers ordered Landers to file a "certified accounting" within forty-five days. Thus, the second judge should not have accepted Landers' certification without hearing from Landers on the record as to his failure to comply with an unequivocal court order directing him to file an accounting.

Nor should the court have approved Davies' two accountings, which he admitted he "cobble[d] together" without prior records or accountings. The court should not overlook that Davies appears to have taken no action to fulfill his fiduciary duties to the trust for nearly three years. And when confronted with the absence of prior accountings and demands from Urbank about having allowed $85,000 in trust assets to escheat, Davies "cobble[d] together" accountings rather than petition the court for instructions as to how he should proceed.

We reject the trial court's dismissal of Urbank's objections to the accounting as insufficiently specific under Rule 4:87-8. Urbank's objections are clear to us, and we fail to see how he should be held to exactness when the court appears to have so obviously failed to hold its appointed fiduciaries to

the same standard. We further note that in approving Davies' fees, the judge failed to address the general rule that an attorney fiduciary should be paid as a fiduciary and not as an attorney for services customarily performed by non-attorney fiduciaries. See In re Estate of Risica, 179 N.J. Super. 452, 455-56 (App. Div. 1981) (noting "work or services which do not require expert attention or professional skill cannot be delegated but must be performed by the fiduciary and compensated only by way of his commissions").

We vacate the January 6, 2020 judgment approving Davies' two accountings and remand for the probate judge to take responsibility to ensure that each of the three successive trustees the court has appointed in this case either files an accounting, produces a previously filed accounting either approved by the court or the beneficiaries or otherwise explains on the record why it was impossible to comply with the order(s) that they account.

We expect that the trial court will act to enforce its own orders, proceeding by way of order to show cause within the next forty-five days and not delegate the task to the current trustee to file an action to be charged to the trust. The trustees who have had trust assets entrusted to them should be ordered to file accountings that can be fairly approved by the court after notice to the beneficiaries. The court should not hesitate to order the disgorgement of

commissions and fees the court has previously awarded, if necessary, to secure the trustees' compliance. The court must ensure that all records, information and documents relating to trust and estate assets are promptly turned over to the current trustee. The beneficiaries should come to an agreement on the appointment of a successor trustee, thereby ending the court's appointment of any more trustees for this trust.

Affirmed in part and vacated in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION